NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Joseph H. Rodriguez |
| v. | : | Crim No. 06-867 (JHR) |
| KASIEM BROWN, a/k/a "KING" | : | **MEMORANDUM OPINION** |

This matter comes before the Court on Defendant Kasiem Brown's (Brian O'Malley, Esquire, appearing) remaining motions contained in his pre-trial omnibus motion [32]. Specifically, Defendant seeks:

1) Suppression of the evidence seized pursuant to warrants of October 10 and 13, 2006;

2) Suppression of Defendant's post-arrest statements;

3) Bill of particulars

4) Severance of counts

The Government, Christopher J. Christie, United States Attorney for the District of New Jersey (Norman Gross and Deborah Prisinzano Mikkelsen, Assistant U.S. Attorneys, appearing) opposes Defendant's remaining motions. For the foregoing reasons, Defendant's motions are denied in part, and rendered moot in part.

### I. Suppression of Evidence Seized
### Pursuant to Warrants of October 10 and 13 2006

Defendant moves to suppress any and all evidence seized as a result of the

1

warrants issued on October 10 and 13 of 2006.[1]  Defendant's first ground for this motion is that the search warrant issued October 10, 2006 was not supported by probable cause. (Def. Br. p. 4.)  He contends that the affidavit in support of the warrant was so "speculative and bereft of specific credible information", that there was no probable cause to search either the residence or the vehicle of Defendant.  (Def. Br. p. 6.)  Moreover, the experience and conclusions of FBI Special Agent Daniel Garrabrandt contained in the affidavit, Defendant contends,"is of no moment to a probable cause determination."  (Id. at 5.)

Defendant's second ground for suppression is that the executing officers could not have reasonably presumed the warrant to be valid.  (Id. at 6.)  To substantiate this ground, Defendant rehashes his first ground, and then adds that the warrant "allowed seizure of virtually anything", and was "facially deficient in failing to specify the items to be seized".  (Id. at 6.)  Defendant then asks this Court to suppress the fruits of the safety deposit box search, provided the warrant is found defective.

The Government responds by noting the "great deference" afforded to the probable cause determination of the magistrate.  (Gov't Opp'n Br. p. 20. (citing Illinois v. Gates, 462 U.S. 213, 236-38 (1983)).  The Government points out that the affidavit in support of the warrant "contained mutually interlocking information from several persons with personal knowledge that Brown was operating a prostitution business that employed the services of underage girls."  (Gov't Opp'n Br. p. 20.)  The Government

---

[1]  Defendant refers to the "warrants of October 10 and 13, 2006" in his Notice of Motion filed 12/07/2007.  His brief deals only with the warrant of October 10, however.  Accordingly, this Memorandum Opinion deals only with that warrant.

2

then disputes Defendant's interpretation of the law, arguing that a magistrate may give "considerable weight" to the experience and conclusion of law enforcement officers contained in an affidavit. (Id. (citing United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000)).

To begin, a district court should not simply "rubber stamp" the conclusions of a magistrate. See United States v. Zimmerman, 277 F.3d 426, 432 (3d Cir. 2002). A *de novo* review is improper, however, because great deference is afforded to the conclusions of the magistrate when issuing a warrant based on probable cause. Whitner, 219 F.3d at 296. As such, in order to uphold the warrant, this Court need only find a minimal "substantial basis" for concluding that probable cause existed. See United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993). Using this deferential standard of review, "[t]he supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner." Whitner, supra at 296 (quoting Conley, 4 F.3d at 1208). Finally, it is important that this Court be cognizant of the issuing magistrate's task

> to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Gates, 462 U.S. at 238.

Here, the fourteen-page affidavit in support of the warrant satisfies the substantial basis standard. The magistrate properly relied not only on the law enforcement officer's experience and conclusions regarding the alleged criminal activity, (see Gov't Br., Ex. D, Attach. C, pp. 2-4), but also on the consistent information

3

provided by several informants with personal knowledge of the alleged criminal activity, (id. at pp. 4-12), plus police records, (id. at 12-13), surveillance information, (id.), and the relevant criminal history of Defendant. (Id. at 13-14.) These factors collectively evince a substantial basis for this Court to conclude that the magistrate properly determined that probable cause existed for the alleged offenses, which thereby justified the issuance of the search warrant.

      Defendant contends, however, that the information provided by the informants in the affidavit deserves no credence because it is hearsay without corroboration. (See Def. Br. p. 6.) Simply put, this contention is incorrect. Although each informant is identified only by her initials, each informant provides essentially the same information; namely, she worked for Defendant as a prostitute, he had several women working for him as prostitutes, and several prostitutes resided at the premises identified in the warrant to be searched– 128 Telford Street, 2nd Floor, Newark, New Jersey. (Gov't Br., Ex. D., Attach. C pp. 4-12.) Unlike a case where the informants are unidentified and provide an anonymous telephone tip, here the informants are alleged victims of Defendant, each of whom provide face-to-face information. Such information deserves credence because "citizens who personally report crimes to the police ... make themselves accountable for lodging false complaints." See United States v. Valentine, 232 F.3d 350, 354 (3d Cir. 2000). Moreover, "[w]here the declarant of the hearsay contained in the search warrant affidavit is a victim ... there is 'built-in' a substantial basis for crediting the reliability of the declarant and the credibility of [her] conclusion." United States v. Nilsen, 482 F. Supp. 1335, 1340 (D.N.J. 1980) (citing United States v. Harris, 403 U.S. 573, 581 (1971)) (alteration to original). Therefore, the information provided by the informants was

properly considered by the magistrate. This result supports the conclusion that the magistrate properly found probable cause in issuing the warrant.

As for Defendant's second ground, the Third Circuit recognizes only four "narrow situations" where an officer's reliance on a search warrant is unreasonable:

> (1) when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function; (3) when the warrant was based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;' or (4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

United States v. $92,422.57, 307 F.3d 137, 146 (3d Cir. 2002). Here, Defendant relies on the third and fourth situations. (Def. Br. p. 6-7.) For the reasons stated above, the third situation does not apply because the magistrate properly concluded that probable cause existed to support the warrant. As for the fourth situation, the Government correctly points out that Defendant never states which portions of the warrant are either insufficiently particularized or overly broad. (Gov't Br. p. 28.) He only states that "[t]he warrants here allowed seizure of virtually anything," suggesting it is overly broad.

An overly broad warrant "describes in both specific and inclusive generic terms what is to be seized, but it authorizes the seizure of items as to which there is no probable cause." See $92,422.57, supra, at 149. In determining whether a warrant is overly broad, this Court "must compare the scope of the search and seizure authorized by the warrant with the ambit of probable cause established by the supporting affidavit." See In re Impounded Case (Law Firm), 840 F.2d 196, 200 (3d Cir. 1996) (citing United States v. Christine, 687 F.2d 749 (3d Cir. 1982)). Here, the items to be searched are described in eleven categories, (see Gov't Br., Ex. D, Attach. B.), and each item falls

5

within the ambit of probable cause established by the supporting affidavit.

Specifically, the probable cause established by the warrant related to eight alleged criminal offenses: (1) possession of a firearm, (2) interstate travel in aid of racketeering - prostitution, (3) money laundering, (4) sex trafficking of children, (5) transportation for purposes of prostitution, (6) coercing/enticing travel for purposes of prostitution, (7) transportation of minors with intent to engage in criminal sexual activity, and (8) aiding and abetting. (Gov't Br., Ex. D, Attach. C. p. 1 ¶ 1.) In accordance with the probable cause determination relating to those alleged criminal offenses, the warrant authorized the search of Defendant's home and vehicle for the following categories of items:

1. Any and all books, records, receipts, notes, ledgers, computer storage devices and other papers *relating to the transportation and scheduling of women for the purposes of prostitution and money laundering activities*, including *but limited to* airline tickets, bus tickets, train tickets … papers relating to domestic and international travel … phone numbers of customers, brothels, massage parlors and escort services;

2. Personal books and papers reflecting names, addresses, telephone numbers and other contacts or identification data *relating to the interstate transportation of women and minor children for the purposes of prostitution*, including but not limited to brokers, pimps, or prostitute names, addresses or contact information;

3. Items containing evidence *relating to the identities and addresses and telephone numbers of their conspirators and associates in their trafficking organization*, such as customer lists, address lists, telephone books, telephone bills, answering machine tapes and caller identification devices, including any and all cellular telephones and any number stored in the memory. Some of these records may be contained and stored in computer memory, and authorization to seize any such computers (and computer data storage devices, i.e., diskettes) and search their memory is sought in this search warrant;

4. Identification documents such as passports, driver's licenses, telephone calling cards, credit cards, social security cards, employee identification cards, vehicle registrations, and photographs;

5. Any and all cash, currency and records relating to the proceeds from prostitution income and expenditures of money and wealth to wit: money orders, wire transfers, cashier's checks and receipts, bank statements, passbooks, checkbooks, and check registers, deposit slips, wire transfer receipts, bank account, safety deposit box account and credit card records; any electronic storage media that would contain information regarding names and locations of brokers or other agents that transport women for the purposes of prostitution; and

6. Items of personal property that tend to identify the person(s) in residence, occupancy, control or ownership of the premises that is the subject of this warrant, including but not limited to canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents and keys.

7. Records of the purchase, ownership and sale of vehicles (including keys), motorcycles, jewelry, furs, recording equipment or electronics and/or those assets themselves.

8. United States currency and money order receipts.

9. Records of the purchase, ownership and sale of real property *during the time period 2002 to the present*.

10. Receipts and invoices for all expenditures made *for the time period 2002 to the present*.

11. Any and all weapons, firearms and ammunition.

(Gov't Opp'n Br., Ex. D, Attach. B.) (emphasis added). While the eleven categories may seem broad, they are not overly so. They certainly do not permit the seizure of "virtually anything", as Defendant contends. Indeed, these items directly relate to the eight alleged criminal offenses for which probable cause existed. See supra, p. 6 of this Memorandum Opinion. By consequence, the items fall within the ambit of probable cause established by the supporting affidavit.

Defendant nevertheless contends that these descriptions failed to meet the particularity requirement. Sufficient particularity exists when nothing is left to the

7

discretion of the officer executing the warrant.  See Marron v. United States, 275 U.S. 192, 196 (1927).  The requirement of particularity prevents general searches, which are prohibited by the Fourth Amendment.  United States v. Fleet Mgmt., Ltd., 521 F. Supp. 2d. 436, 441 (E.D.Pa. 2007).  Specifically, the requirement is designed to "prevent the police from undertaking a general, exploratory rummaging through a person's belongings."  Bartholomew v. Commonwealth of Pa., 221 F.3d 425, 428 (3d Cir. 2000).

Here, the items to be seized are identified with such particularity that the executing officers had no discretion upon executing the warrant.  For example, paragraphs 9 and 10 listed above limit certain items to be seized by their dates–"2002 to the present."  Paragraphs 1, 2, and 3 limit the books, ledgers, and other items to be seized by their relation to the alleged unlawful activity, for which probable cause was determined to exist.[2]  Paragraphs 4, 5, 6, 7, 8, and 11 are best described as limited to the fruits and instrumentalities of the alleged unlawful activity, again for which probable cause was determined to exist.  As a result of the foregoing, the particularity requirement is satisfied.  Therefore, Defendant's second ground to suppress the evidence fails.  Defendant's motion is denied.  Because the warrant is not defective, the fruits of the subsequent safety deposit box search are not suppressed.

## II. Suppression of Defendant's Post-Arrest Statements

Defendant moves to suppress his post-arrest statements pursuant to Federal Rule of Criminal Procedure 12(b)(3).  Defendant contends that he did not "voluntarily,

---

[2]  Notably, the books in this case are the very books that the Supreme Court put "on quite a different constitutional footing" from the books illegally seized in Stanford v. St. of Tex., 379 U.S. 476, 485, n.16 (1965) (suppressing, in part, books espousing Communist Party ideals).

8

knowingly and intelligently waive his rights." (Def. Br., p. 10.) When a defendant contends that his statements were taken in violation of Miranda, the Government has the burden to prove waiver by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168 (1986). Here, Special Agent Garrabrandt testified at the suppression hearing on March 5, 2008 that he reviewed with Defendant a "Waiver of Rights" form before he began any questioning.[3] (3/5/2008 Tr. at 102-03.) This Court finds S.A. Garrabrandt's testimony credible. The waiver, which was signed by Defendant on October 11, 2006 at 11:52 a.m., delineates Defendant's rights under Miranda. (Gov't Opp'n Br., Ex. E.) It also contains the significant language—"I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." (Id.)

Pointedly, there is no evidence to suggest that Defendant was either coerced or promised anything in consideration for his waiver of rights. (3/5/2008 Tr. at 105.) Nor is there any evidence to suggest that the officers exerted any forceful or coercive means to elicit information once the questioning began. Instead, the record shows that in the thirty minutes of questioning that did take place, Defendant answered some questions and declined to answer others. (Id. at 105.) He ultimately terminated the conversation when he saw fit. (Id. at 106.) Defendant now asserts that he was "lulled … by the officers' gentlemanly conduct." (Def. Br., p. 9.) Yet, such conduct falls far from the tree of impermissible police behavior. The government has shown by a preponderance of the evidence that Defendant was properly Mirandized, and thereafter voluntarily,

---

[3] Detective Michael Tracy of the Atlantic City Police Department was present at this time and witnessed the process.

9

knowingly, and intelligently waived his rights in speaking to the police. There is no evidence to suggest that Defendant was coerced to either waive his rights or make incriminating statements to the police. Therefore, Defendant's motion to suppress his post-arrest statements is denied.

### III. Bill of Particulars

Defendant next moves for a bill of particulars. Pursuant to Federal Rule of Criminal Procedure 7(f), this Court may order the Government to file a bill of particulars where "an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." See United States v. Rosa, 891 F.2d 1063, 1066 (3d Cir. 1989). The granting of a bill of particulars lies within the sound discretion of the District Court. See United States v. Urban, 404 F.3d 754, 772 (3d Cir. 2005). In deciding whether to grant the bill, the Court may consider the scope of information available through discovery as well as the information set forth in the indictment. See, e.g., United States v. Boffa, 513 F. Supp. 444, 485 (D.Del. 1980). The dual purpose of a bill of particulars is to inform the defendant of the nature of the charges against him and to allow him to plead his conviction as a bar to another prosecution. See Wong Tai v. United States, 273 U.S. 77, 82 (1927). Neither of these purposes will be advanced by a bill of particulars in this case.

Defendant seeks four broad categories of information: (1) records and information regarding the criminal history of any witnesses the Government intends to call at trial; (2) records and information regarding prior bad acts of any witness the Government intends to call at trial, including information contained in law enforcement personnel files; (3) dates and descriptions of consideration or promises of consideration

made during the course of the investigation; and (4) contradictory or inconsistent written and oral statements made by witnesses the Government intends to call at trial. (Def. Br., p. 12.)

Pointedly, none of these requests serve to inform Defendant of the nature of the charges against him; the indictment already does that. See infra, Part.IV.  Moreover, the Order for Discovery and Inspection (*filed* 5/13/2007) subsumes these requests in their entirety.  Because "[t]he purpose of a bill of particulars is *not* to permit wholesale discovery of the Government's evidence", United States v. Giampa, 904 F. Supp. 235, 279 (D.N.J. 1995) (internal quotations omitted) (emphasis added), but rather to inform the defendant of the charges against him, Defendant's request for a bill of particulars is denied.

## IV. Severance of Counts

Lastly, Defendant moves for a severance of counts pursuant to Federal Rule of Criminal Procedure 14.  He contends that the "three counts of the indictment should be severed from each other because they were misjoined and such joinder will prejudice Defendant at trial." (Def. Br. p. 16.)  Specifically, it is the two possessory offenses that Defendant contends are improperly joined.  (Id.)  Federal Rule of Criminal Procedure 8 (a) states in relevant part:

> The indictment ... may charge a defendant in separate counts with 2 or more offenses if the offenses charged ... are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a).  The purpose of Rule 8 is to "promote economy of judicial and prosecutorial resources." United States v. Gorecki, 813 F.2d 40, 42 (3d Cir. 1987).

11

Here, Count I of the indictment charges Defendant as an armed career criminal in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1) and (2), for conduct occurring in Newark, New Jersey on or about October 11, 2006.  (See Superceding Indictment p. 1.)  Count II of the indictment charges Defendant as an armed career criminal in violation of 18 U.S.C.  §§ 922(g)(1), 924(e)(1) and (2), for conduct occurring in Atlantic City, New Jersey on January 30, 2006.  (Id. at p. 2.)  Count III of the indictment charges Defendant with conspiracy to deal firearms without a license in violation of 18 U.S.C. § 922(A)(1)(a).  (Id. at p. 3.)

On October 27, 2008, this Court suppressed the firearm that constitutes the basis for Count II.  See United States v. Brown, 2008 WL 4757311 at *11 (D.N.J. 2008).  There, the Court held that the police lacked reasonable suspicion to stop the vehicle in which Defendant was a passenger, which thereby rendered the seized firearm fruit of an unlawful seizure.  Id.  As a result of that holding, this motion is rendered moot because Count II is no longer viable.

### V. Conclusion

As a result of the foregoing, Defendant's suppression motions and request for a bill of particulars are denied.  Defendant's motion for a severance of counts is moot.




/s/ Joseph H. Rodriguez
U.S.D.J.

December 18, 2008
    DATE

12